Reversed and remanded by published opinion. Judge GREGORY wrote the majority opinion, in which Judge WYNN joined. Judge WYNN wrote a separate concurring opinion. Judge MOTZ wrote a dissenting opinion.
GREGORY, Circuit Judge:
Appellant Madison Duane McRae was convicted of four drug-related charges on September 14, 2005. After an unsuccessful appeal and a pro se attempt to have his sentence vacated, corrected, or set aside under 28 U.S.C. § 2255, McRae filed a pro se motion with the district court entitled “Motion for Relief from Judgment 60(b)(1)(3)(6)The district court dismissed the motion for lack of subject-matter jurisdiction, finding that it constituted an impermissible successive habeas petition rather than a proper Rule 60(b) motion. McRae appeals this judgment.
The threshold issue before us is whether we can review the district court’s categorization of McRae’s motion without first issuing a Certificate of Appealability (“COA”) pursuant to 28 U.S.C. § 2253(c)(1)(B). We hold that recent Supreme Court jurisprudence has made clear that § 2253(c) does not apply in this particular situation. Because we find that McRae’s motion constitutes a mixed Rule 60(b)/ § 2255 motion, we remand to the district court to afford McRae the opportunity to decide whether to abandon his improper claim or to proceed with a successive habeas petition.
I.
A.
In 2004, Immigration and Customs Enforcement (“ICE”) Agent Blaine Crum began investigating McRae’s co-defendant, Rodney Green, after he became suspicious of drug trafficking activity. On August 21, 2004, Agent Crum learned that Green and McRae had traveled to Jamaica, as had Green’s connection Andrea Spears. Two other women, Atonía Bailey and Latía Harris, had flown to Jamaica as well. Although the travelers flew out of two different airports (Green and McRae from one and Spears, Harris, and Bailey from the other), all of their tickets had been purchased using cash at the Columbus, Ohio airport.
When Spears, Harris, and Bailey returned from Jamaica they were questioned at the Charlotte Douglas International Airport by customs agents, who seized cocaine and marijuana from Harris and Bailey. McRae and Green were pulled aside by customs agents at the Memphis International Airport for secondary examinations; Agent Crum sat in on their interviews.
After the interviews, Agent Crum called the Charlotte airport and learned that Bailey and Harris had been transporting controlled substances. Bailey had also identified McRae using a photograph. Based on this information, Agent Crum arrested McRae and Green. He obtained a search warrant for, among other things, the information in McRae’s cell phone, and retrieved McRae’s text messages, list of contacts, and record of recent calls. Agent Crum learned that the number labeled “Tnia” was Bailey’s, and that McRae and Green had contacted each other just before leaving for Jamaica.
In February 2005, McRae was charged with four drug-related offenses. At the *395 ensuing trial, Green, Bailey, Harris, and Spears testified against McRae. According to Green, he began distributing cocaine to McRae in 2004 and later agreed to help McRae import cocaine from Jamaica. Green testified that, after he and McRae successfully imported a kilogram of cocaine in August 2004, Green and McRae arranged for Spears, Harris, and Bailey to travel to Jamaica. McRae purchased everyone’s tickets, and Green bought 1.5 kilograms of cocaine while in Jamaica. Green also gave McRae Ace bandages and duct tape for strapping the cocaine onto Bailey and two smaller packages for Harris and Spears to insert into their vaginas.
According to Bailey, in mid-August 2004 McRae offered her $500 to go to Jamaica and “bring something back.” J.A. 182. After initially agreeing Bailey changed her mind, but McRae said since they already had the tickets they could still go to Jamaica and “kick it.”- J.A. 183-84. Bailey testified that when she got out of the shower on their last morning in Jamaica her ticket and birth certificate were missing. McRae told her that if she wanted to get home she would have to transport packages of cocaine, which she did.
Spears testified that she traveled to Jamaica with Green and a woman named Cheryl Turner in January 2004 and transported 500 Ecstasy pills to the United States. In the summer of 2004 Harris asked Spears to go back to Jamaica with Harris and Green. Spears initially declined, but agreed when Green told her this trip would not be like the first. According to Spears, on their last morning in Jamaica she got out of the shower and found a package of drugs lying on her clothes. After arguing with Green she inserted the package into her vagina, but she removed it before leaving.
According to Harris, she traveled to Jamaica at Green’s invitation, and when she got out of the shower on their last morning there, a package of drugs was lying next to her clothes. Following Green’s instructions, she inserted the package into her vagina.
Several law enforcement officers also testified at McRae’s trial. Agent Crum testified that during McRae’s interview at the airport, McRae said that he worked in real estate and that Green had paid for his trip to Jamaica. Agent Crum asked McRae if he could look through his cell phone. He found a contact labeled “Tnia,” and asked McRae if that contact was Ato-nía Bailey; McRae denied that it was. At some point McRae withdrew his consent for Agent Crum to search the phone, and Agent Crum did not go through the phone again until he obtained a warrant.
ICE Agent Robert Mensinger, who assisted Agent Crum with his investigation, testified about a conversation he had with McRae at the airport. According to Agent Mensinger, McRae asked whether he could do anything to help his situation. Agent Mensinger asked McRae if he had been advised of his rights, to which McRae responded, “Yeah, I know my rights.” J.A. 572. Agent Mensinger did not provide McRae with an official Miranda form, but he did advise McRae of his right to remain silent and his right to an attorney. As Agent Mensinger started to leave the room, McRae began talking about the trip to Jamaica. According to Mensinger, McRae initially said that he had not seen Bailey for several weeks, but later changed his story and admitted to being with her as well as Spears, Harris, and Green in Jamaica. He stated that he had seen two kilograms of cocaine in the bungalow in Jamaica, and told Agent Mensinger about how Green had strapped the cocaine onto “the girls.” J.A. 574-75.
McRae’s counsel objected to both Agent Crum’s and Agent Mensinger’s testimony. *396 As Agent Crum began testifying about his interview with Green and McRae at the airport, counsel asserted that there was no corroborative evidence of the statements allegedly made by McRae and no waiver-of-rights form, and moved for voir dire. The district court denied the motion, stating that counsel could accomplish his goals on cross-examination. Similarly, counsel requested the opportunity to voir dire Agent Mensinger. The court denied the motion, but directed the government to lay a foundation to allow the court to determine whether there had been a violation of rights. Counsel had not moved to suppress testimony from either agent. Prior to jury deliberations, the court explained its denial of counsel’s voir dire motions in greater detail. It noted that McRae’s counsel had waived the right to a suppression hearing by failing to file a pre-trial motion to suppress, but found in the alternative that the testimony in question “was credible, the appropriate warnings were given, and ... any statements made by the defendant were knowing and voluntary.” J.A. 655-56.
B.
After a three-day trial, on September 14, 2005, a jury convicted McRae of four drug-related charges. On May 25, 2006, the district court sentenced McRae to 210 months of imprisonment for each of the four charges, to run concurrently. McRae appealed, but this Court affirmed his conviction and sentence. United States v. McRae, 235 Fed.Appx. 968 (4th Cir.2007) (per curiam) (unpublished). On May 12, 2008, McRae filed a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Among other things, McRae claimed ineffective assistance of trial and appellate counsel and prosecutorial misconduct. On July 19, 2010, without holding an evidentiary hearing, the district court granted the government’s motion for summary judgment. This Court subsequently held that McRae could not appeal absent a COA, which the Court declined to issue. United States v. McRae, 450 Fed.Appx. 284 (4th Cir.2011) (per curiam) (unpublished).
After filing unsuccessful petitions for rehearing and rehearing en banc, and a writ for certiorari, McRae filed a pro se motion entitled “Motion for Relief from Judgment 60(b)(l)(3)(6).” His motion highlighted five alleged errors in the district court’s § 2255 proceedings: 1) the district court, relying on the government’s memorandum, falsely stated that the court had not mentioned counsel’s failure to move to suppress when denying counsel’s motions for voir dire; 2) the district court mistakenly stated that McRae admitted to knowing Bailey; 3) the district court did not consider every statement made by McRae in determining whether his counsel was inefi fective for failing to move to suppress; 4) the district court mistakenly attributed Agent Mensinger’s testimony that McRae knew his rights to Agent Crum; and 5) the district court misquoted Agent Mensinger as telling McRae an attorney would be appointed for him if he could not afford one. The court dismissed McRae’s Rule 60(b) motion for lack of subject-matter jurisdiction, holding that the motion was a successive § 2255 motion for which he had failed to obtain preauthorization under 28 U.S.C. § 2244(b)(3), and declining to issue a COA. McRae timely appealed, and this Court appointed counsel to address the question “whether, in light of Reid v. Angelone, 369 F.3d 363 (4th Cir.2004), and Gonzalez v. Crosby, 545 U.S. 524, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005), McRae’s appeal of the district court’s dismissal of his Rule 60(b) motion as an unauthorized successive § 2255 motion is subject to the certificate of appealability requirement.”
*397 II.
On appeal, McRae argues that the district court erred in treating his motion as a successive habeas petition rather than a “mixed” Rule 60(b)/ § 2255 motion, and that this Court may review the district court’s determination without first issuing a COA'. “[0]ur review is de novo where a district court construes a motion as a successive § 2255 motion and dismisses it for failure to obtain prefiling authorization from a court of appeals.” United States v. MacDonald, 641 F.3d 596, 609 (4th Cir. 2011).
Rule 60(b) allows a court to relieve a party from a final judgment for the following reasons:
(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); fraud (whether previously called intrinsic or extrinsic), misrepresentation, or other misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or otherwise vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.
Fed.R.Civ.P. 60(b). Rule 60(b) applies to § 2255 proceedings, but only “to the extent that [it is] not inconsistent with” applicable statutory provisions and rules. Rules Governing Section 2255 Cases, Rule 12, 28 U.S.C. foil. § 2255. Therefore, a Rule 60(b) motion in a habeas proceeding that attacks “the substance of the federal court’s resolution of a claim on the merits” is not a true Rule 60(b) motion, but rather a successive habeas petition. Gonzalez, 545 U.S. at 531-32, 125 S.Ct. 2641. A successive habeas petition may not be filed in district court without preauthorization from a court of appeals under § 2244(b)(3)(A). A Rule 60(b) motion that challenges “some defect in the integrity of the federal habeas proceedings,” however, is a true Rule 60(b) motion, and is not subject to the preauthorization requirement. Id.
Under the Antiterrorism and Effective Death Penalty Act of 1996 (AED-PA), Pub.L. No. 104-132, a court of appeals may not review “the final order in a proceeding under section 2255” unless a circuit justice or judge'issues a COA. 28 U.S.C. § 2253(c)(1)(B).[1] A judge may issue a COA “only if the applicant has made a substantial showing of the denial of a constitutional right.” Id. This standard varies slightly depending on whether the district court denied the applicant’s habeas petition on the merits or on procedural grounds. If the denial was on the merits, “[t]he petitioner must demonstrate that reasonable jurists would find the district court’s assessment of the constitutional claims debatable or wrong.” Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). If, on the other hand, the denial was procedural, the petitioner must show “that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.” Id. (emphasis added).
In Reid v. Angelone, this Court held that the § 2253(c) COA requirement applies to an order denying a Rule 60(b) *398 motion in a habeas action.[2] 369 F.3d 363, 369 (4th Cir.2004). The Court reached this conclusion by examining the plain language of § 2253(c). Id. at 367. First, the Court determined that although § 2253(c) applies only to one order in any given habeas proceeding (“the final order”), “a single habeas action may embrace multiple habeas ‘proceedings’.... ” Id. at 367-68. Second, the Court found that a proceeding involving a Rule 60(b) motion is necessarily a proceeding distinct from the one giving rise to the underlying challenged judgment. Id. at 368. And finally, the Court reasoned that a Rule 60(b) proceeding challenging the judgment in a habeas proceeding is itself a “habeas corpus proceeding” for the purposes of § 2253(c). Id. at 369. After analyzing the text of the statute, the Reid Court also found that subjecting Rule 60(b) motions to the COA requirement is consistent with the policy concerns underlying the requirement. Id. at 369-70.
The Reid Court issued a COA, but then dismissed the petitioner’s Rule 60(b) motion as an improper successive habeas petition. Id. at 374-75. In doing so, the Court acknowledged the apparent incongruity of granting a COA only to hold that the district court lacked jurisdiction. Id. at 374 n. 7. However, the panel found itself to be constrained by the statutory text of the COA requirement, which does not include an explicit exception for “questions of subject-matter jurisdiction.” Id., see also Jones v. Braxton, 392 F.3d 683, 688-89 (4th Cir.2004) (holding that an order dismissing a habeas petition as an unauthorized successive petition is subject to the COA requirement).
Subsequent Supreme Court cases have made clear that we need not accept this incongruity in every situation. Based on the Court’s reasoning in Gonzalez, 545 U.S. 524, 125 S.Ct. 2641, and Harbison v. Bell, 556 U.S. 180, 129 S.Ct. 1481, 173 L.Ed.2d 347 (2009), we hold that the COA requirement in § 2253(c) allows us to review, without first issuing a COA, an order dismissing a Rule 60(b) motion as an improper successive habeas petition.
In Gonzalez, the Supreme Court considered whether Rule 60(b) motions in habeas cases “are subject to the additional restrictions that apply to ‘second or successive’ habeas corpus petitions” under AEDPA. 545 U.S. at 526, 125 S.Ct. 2641; see also 28 U.S.C. § 2244(b). It concluded that “true” Rule 60(b) motions, motions that challenge “not the substance of the federal court’s resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings,” should not be treated as successive habeas petitions. Id. at 531-33, 125 S.Ct. 2641. Central to this holding is the principle that, in order to preserve the “unquestionably valid role” Rule 60(b) motions play in habeas cases, we must distinguish between true Rule 60(b) motions and successive habeas applications. See id. at 533-34,125 S.Ct. 2641.
Four years later, the Supreme Court held in Harbison that a habeas petitioner appealing the denial of a motion to enlarge the authority of appointed counsel need not obtain a COA. 556 U.S. at 183, 129 S.Ct. 1481. In so holding, the Court noted that § 2253(c)(1)(A)[3] “governs final orders that dispose of the merits of a habeas corpus proceeding — a proceeding challenging the lawfulness of the petitioner’s de *399 tention.” Id. Because an order denying a motion to enlarge authority of counsel' “is not such an order,” the Court reasoned that the COA requirement did not apply. Id.
In the wake of Harbison, other circuits have questioned the continued validity of requiring a habeas petitioner to obtain a COA before appealing a denial of a Rule 60(b) motion. In Wilson v. Secretary Pennsylvania Department of Corrections, the Third Circuit noted that its precedent in Mortis v. Horn, 187 F.3d 333 (3d Cir. 1999), applied the COA requirement to an appeal of a denial of a Rule 60(b) motion, but recognized that “the vitality of that decision is undermined somewhat by the Supreme Court’s decision in Harbison v. Bell.” 782 F.3d 110, 115 (3d Cir.2015). And in Jones v. Ryan, the Ninth Circuit cited Harbison for the proposition that “[w]ere [the petitioner] appealing the denial or dismissal of a valid Rule 60(b) motion, he may have had no need for a COA.” 733 F.3d 825, 832 n. 3 (9th Cir.2013).[4]
The Gonzalez Court explicitly left open the question whether orders denying Rule 60(b) motions in habeas cases are exempt from § 2253(c)’s COA requirement.[5] 545 U.S. at 535 & n. 7, 125 S.Ct. 2641. And Harbison certainly bears on that question, recognizing a link between the need for a COA and an order’s effect on the merits of a habeas proceeding. For our purposes today, however, we need not determine whether the COA requirement applies to all orders denying Rule 60(b) motions. Our inquiry is much narrower: whether we may address the district court’s jurisdictional categorization of a Rule 60(b) motion as a successive habeas petition without first issuing a COA.
Gonzalez mandates that we treat true Rule 60(b) motions differently from successive habeas petitions, and Harbison holds that only final orders with a sufficient nexus to the merits of a habeas petition trigger the COA requirement. In other words, Gonzalez reveals the importance of distinguishing between Rule 60(b) motions and successive petitions, and Harbison opens the door for us to ensure that the district court does so properly. While a denial of a Rule 60(b) motion may be sufficiently connected to the merits of the underlying habeas proceeding, a dismissal is not. When a district court denies a Rule 60(b) motion on the merits, it necessarily considers the merits of the underlying habeas petition. Since a Rule 60(b) motion alleges illegality in the conduct of a proceeding, considering the merits of such a motion is, in and of itself, developing a nexus to the actual habeas proceeding itself, and thus to the merits of that proceeding.[6] The same cannot be said about *400 a dismissal of a Rule 60(b) motion on jurisdictional grounds. No one can say right now whether McRae’s habeas proceeding was with merit or without based on the district court’s dismissal.
A jurisdictional dismissal of a collateral attack on a habeas proceeding is so far removed from the merits of the underlying habeas petition that it cannot be said to be a “final order[ ] ... disposing] of the merits of a habeas corpus proceeding ... challenging the lawfulness of the petitioner’s detention.” See Harbison, 556 U.S. at 183, 129 S.Ct. 1481. We therefore hold that we need not issue a COA before determining whether the district court erred in dismissing McRae’s purported Rule 60(b) motion as an unauthorized successive habeas petition.[7]
III.
The parties agree that the district court erred in dismissing McRae’s motion as an impermissible successive § 2255 petition. See Appellee’s Br. 48-50; Appellant’s Reply Br. 1. McRae argues, and the government agrees, that his first, second, fourth, and fifth claims are properly categorized as Rule 60(b) claims challenging the collateral review process, whereas his third claim is a successive attack on his conviction over which the district court did not have jurisdiction. This Court has made clear that' ■ “[w]hen [a] motion presents claims subject to the requirements for successive applications as well as claims cognizable under Rule 60(b), the district court should afford the applicant an opportunity to elect between deleting the improper claims or having the entire motion treated as a successive application.” United States v. Winestock, 340 F.3d 200, 207 (4th Cir.2003). McRae was not given that opportunity here.
The government contends, however, that we should affirm the district court on other grounds. Specifically, it argues that 1) McRae’s Rule 60(b) claims were untimely, and 2) he failed to make the requisite showing of extraordinary circumstances.[8]
Under Rule 60(c)(1), a Rule 60(b)(1), (2), or (3) motion must be made “no more than a year after the entry of the judgment or order or the date of the proceeding.” Fed.R.Civ.P. 60(c)(1). All four of McRae’s 60(b) claims fall into these categories, but he filed his motion nearly 18 months after the district court denied his § 2255 motion. Therefore, the government argues that McRae’s motion is time-barred. McRae correctly asserts, however, that this issue should be resolved by the district court in the first instance. In United States v. Blackstock, this Court declined to affirm the dismissal of a § 2255 petition on the alternate ground that the petition was time-barred. 513 F.3d 128, *401 133 (4th Cir.2008). The panel, noting that “AEDPA’s limitations period is an affirmative defense,” held that “it would be improper ... to affirm the dismissal ... on timeliness grounds” where the petitioner “has had no opportunity to come forward with evidence that might justify the application of equitable tolling, or otherwise establish that his claims are not time-barred.” Id. Similarly, the Rule 60(b) one-year filing deadline is an affirmative defense. See Willis v. Jones, 329 Fed.Appx. 7, 14 (6th Cir.2009) (unpublished) (holding that “this Rule 60(b) time limit is an affirmative defense, not a jurisdictional bar”).[9] Because the issue of timeliness was not raised below, McRae has not had an opportunity to make a case for timely filing. Therefore, the proper course of action is to remand.
Similarly, the merits of McRae’s claims are best addressed by the district court in the first instance. Although appellate courts do sometimes proceed to the merits of miscategorized Rule 60(b) motions, see, e.g., Gonzalez, 545 U.S. at 536, 125 S.Ct. 2641, the Winestock rule counsels in favor of remand. 340 F.3d at 208-09; see also Reid, 369 F.3d at 375 (remanding and “tak[ing] no position on whether Reid is in fact entitled to Rule 60(b) relief’). At least one other Court of Appeals has taken this approach as well. See Cox v. Horn, 757 F.3d 113, 124 (3d Cir.2014) (“The grant or denial of a Rule 60(b)(6) motion is an equitable matter left, in the first instance, to the discretion of a district court.”). And as McRae points out, our deferential standard of review regarding Rule 60(b) motions recognizes the district court’s superior position for evaluating the merits. See Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp., 383 F.2d 249, 251 (4th Cir.1967) (“The disposition of motions made under Rule[ ] ... 60(b) is a matter which lies largely within the discretion of the trial judge and his action is not lightly to be disturbed by an appellate court.”); see also Std. Oil Co. of Cal. v. United States, 429 U.S. 17,19, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976) (noting that “the trial court is in a much better position to pass upon the issues presented in a motion pursuant to Rule 60(b)” (internal quotation marks omitted)). For these reasons, the merits of McRae’s 60(b) claims are best left to the district court on remand.
IV.
We therefore reverse the judgment of the district court and remand for further proceedings.

REVERSED AND REMANDED

. An identical requirement applies to "the final order in a habeas corpus proceeding [under § 2254] in which the detention complained of arises out of process issued by a State court.” 28 U.S.C. § 2253(c)(1)(A).

. Reid, dealt with a § 2254 proceeding, but the analysis is applicable to § 2255 proceedings as well.

. Like the Fifth Circuit, "[w]e find no reason why the Harbison Court’s reasoning would not be equally applicable to § 2253(c)(1)(B).” United States v. Fulton, 780 F.3d 683, 686 (5th Cir.2015).

. At least one circuit excluded orders denying Rule 60(b) motions from the COA requirement prior to Harbison. See Dunn v. Cockrell, 302 F.3d 491, 492 & n. 1 (5th Cir.2002).

. It was this Court's decision to issue a COA following a denial on the merits that the Supreme Court indicated might have been appropriate in Gonzalez. Specifically, the Supreme Court stated that “[mjany Courts of Appeals have construed 28 U.S.C. § 2253 to impose an additional limitation on appellate review by requiring a habeas petitioner to obtain a COA as a prerequisite to appealing the denial of a Rule 60(b) motion.” 545 U.S. 524, 535, 125 S.Ct. 2641 (emphasis added). Furthermore, the Gonzalez Court did not endorse Reid’s holding, but merely compared it favorably to the "near-absolute bar” imposed by the Eleventh Circuit. See id. at 535 n. 7, 125 S.Ct. 2641 (noting that Reid’s application of the COA requirement to Rule 60(b) motions is "a more plausible and effective screening requirement” (emphasis added)).

.For example, in a Rule 60(b) motion addressing the merits, if a petitioner alleged that his conviction was based on perjury committed by a testifying witness, that would call into question the validity of his initial sentencing. Therefore, if a district court denied that motion, it would have weighed the merits of *400 the motion, found they were lacking, and therefore that the original habeas proceeding itself was valid.

. The facts of the case before us do not require us to reexamine Reid in its entirety under Harbison and Gonzalez. Rather, we recognize today an abrogation of only a small part of Reid's reasoning. In that case, the lower court denied the purported Rule 60(b) motion on the merits, and this Court raised the jurisdictional issue sua sponte after granting a COA. See 369 F.3d at 373-75. The petitioner's appeal challenged a type of order different from the one at issue here: an order addressing the merits of a Rule 60(b) motion, as opposed to an order dismissing a Rule 60(b) motion as a successive habeas application. Unless and until this Court concludes that Harbison makes the COA requirement inapplicable to denials of Rule 60(b) motions generally, Reid's reasoning remains almost entirely intact.

. This showing is required only for Rule 60(b)(6) claims. See Gonzalez, 545 U.S. at 535, 125 S.Ct. 2641; Aikens v. Ingram, 652 F.3d 496, 500 (4th Cir.2011) (en banc).

. The court reasoned: "The Federal Rules, in and of themselves, do not alter the jurisdiction of the district court. And the Supreme Court has held that similar ‘claim-processing rules' are not jurisdictional.” Willis, 329 Fed.Appx. at 14. (internal citations omitted).