**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1134**

STEVEN W. HOGAN,

                Plaintiff − Appellant,

        v.

PFC MICHAEL BEAUMONT; SGT RADCLIFFE DARBY,

                Defendants – Appellees.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Catherine C. Blake, District Judge.  (1:18-cv-01448-CCB)

Submitted:  May 17, 2019                                Decided:  July 31, 2019

Before DIAZ, FLOYD, and THACKER, Circuit Judges.

Affirmed by unpublished opinion.  Judge Diaz wrote the opinion, in which Judge Floyd and Judge Thacker joined.

Jason A. Ostendorf, LAW OFFICE OF JASON OSTENDORF LLC, Baltimore, Maryland, for Appellant.  Kevin Karpinski, Sandra D. Lee, KARPINSKI, COLARESI & KARP, P.A., Baltimore, Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge

Steven Hogan brought an excessive force claim against two police officers after they twice tased him while he was purportedly trying to turn over his gun. The officers filed a motion for summary judgment, which the district court granted. On appeal, Hogan argues that the officers' use of force was not objectively reasonable because he did not pose an immediate threat to their safety. For the reasons that follow, we affirm.

I.

A.

The undisputed facts of this case establish that in June 2016, Hogan was convicted of a crime that disqualified him from legally possessing a firearm. A month after his release from prison, while cleaning his house, Hogan found a gun that he had bought legally before his conviction. Knowing that the gun was now illegal, he decided to turn it over to police; but he feared that if he simply called to turn in the gun, the police would arrest him. So, he decided to report a break in at his house and turn the gun over to the responding officer. Sergeant Richard Lambert responded to Hogan's break-in report.

Hogan's and Lambert's accounts differ about what happened next. Hogan alleges that he tried to hand the gun to Lambert, but that Lambert panicked and retreated. Lambert contends Hogan showed him the gun, but when Lambert tried to grab it, Hogan pulled it away, saying "hell no," and slammed the door. J.A. 30. Lambert then called for backup. Under either account, it's clear that Lambert didn't understand Hogan's intention to turn over the gun.

2

Six officers, including Sergeant Radcliffe Darby and Private First Class Michael Beaumont, responded to the backup call at 1:46 p.m. Police reports indicate that Hogan was tased thirty minutes later at 2:10 p.m. Both Hogan's and police accounts agree about the events immediately surrounding the tasing incident: Darby convinced Hogan to come out of the house, which he did. When he stepped out of the house, Darby tased him. The taser didn't work, and Hogan retreated into the house. Darby again convinced Hogan to come out, at which point Beaumont tased Hogan from behind, briefly incapacitating him, and the officers took him into custody.

But Hogan's and police accounts differ in their description of the thirty minutes before Hogan was tased. According to Hogan, Darby arrived as backup and tased Hogan almost immediately thereafter, without assessing the situation. Police reports indicate, however, that Darby arrived and tried to engage with Hogan for half an hour. They further indicate that during those thirty minutes, Hogan was pacing in and out of his house, asking the police to shoot him, threatening to beat them with their own guns, and refusing to leave his front stoop.

B.

Hogan filed a complaint alleging that the officers' use of their tasers was excessive and unreasonable, in violation of his Fourth Amendment rights. He alleges that he was tased even though he posed no threat to the officers, was committing at most a non-violent misdemeanor, and was complying with the officers' requests, not resisting arrest.

The officers filed a motion for summary judgment. They contended that they did not violate Hogan's Fourth Amendment rights, but that even if they did, they were entitled

3

to qualified immunity because those rights weren't clearly established. They attached police reports of the incident, Lambert's sworn charging statement, and other related forms, which they believe show that the officers took objectively reasonable action to control an immediate threat. Hogan responded that he didn't pose an immediate threat and therefore had a clearly established right not to be tased. However, he didn't introduce sufficient evidence to support his claims. He instead relied on the same materials presented by the police, and the allegations in his complaint.

The district court held that the officers were entitled to qualified immunity. Reviewing the record as a whole, the court found "no fact in dispute that is material to the objective reasonableness inquiry." J.A. 94. And since the undisputed facts established that the officers' use of force was not excessive or unreasonable, the court concluded that the officers did not violate Hogan's Fourth Amendment rights.

Hogan filed a motion to reconsider under Rule 60(b)(6), alleging that the court committed an error of law. He argued that the court failed to view the facts in the light most favorable to him, the nonmovant. He repeated the assertion that he posed no threat, arguing specifically that although Lambert had only described Hogan as "displaying" the gun, the court found that he "wielded" the gun. According to Hogan, this meant the court viewed his actions as more threatening than established by the record. The court denied the motion.

Hogan timely appealed the grant of summary judgment and the denial of the motion to reconsider.

4

II.

We review a district court's decision to grant summary judgment de novo, viewing all facts and inferences in the light most favorable to the nonmoving party. *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018). Where the record, taken as a whole, fails to provide a genuine issue of material fact, the court must grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A material fact is one that "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To adequately dispute a material fact, the nonmovant must present evidence beyond the allegations in his complaint. *Id.*

In this case, we look to see if the record as a whole entitles the officers to qualified immunity. Qualified immunity shields government officials from liability for civil damages so long as their conduct doesn't violate a clearly established Constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To be entitled to qualified immunity, an officer must show either (1) that he did not violate a Constitutional right, or (2) that the right was not clearly established. *Id.* at 232. Although courts are not required to analyze these questions sequentially, it is "often the better approach" to first decide if there even is a Constitutional violation. *E.W. ex rel. T.W. v. Dolgos*, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). Here, we exercise our discretion to first decide if the facts in the light most favorable to the plaintiff establish a Fourth Amendment violation.

To decide if an officer's use of force violates the Fourth Amendment, we must ask whether a reasonable officer, presented with the same facts and circumstances, would find the defendant's actions objectively reasonable. *Graham v. Connor*, 490 U.S. 386, 396–97

5

(1989). Our inquiry looks at the "full context, with an eye toward the proportionality of the force in light of all the circumstances," and we are not aided by "[a]rtificial divisions in the sequence of events." *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994). The objective reasonableness test requires careful attention to the facts and circumstances of each particular case, including the nature of the underlying crime, whether the suspect posed an immediate threat to the safety of officers and others, and whether he was resisting arrest. *Graham,* 490 U.S. at 396.

In this case, we conclude that the officers' decision to tase Hogan twice was not an unreasonable or excessive use of force. The undisputed record establishes that Hogan filed a false police report, was armed, and failed to relinquish his gun during a thirty-minute interaction with the police. Police reports also indicate that prior to being tased, Hogan was agitated, acting erratically, ignoring police instructions, and threatening the police. Under these circumstances, a reasonable officer would believe that Hogan posed an immediate threat to the officers' safety. *See Meyers v. Baltimore County*, 713 F.3d 723, 733 (4th Cir. 2015) (holding that a man in an agitated state, armed with a bat that he refused to relinquish, posed an immediate threat).

Hogan turns a blind eye to these facts. He counters them only with the allegation in his complaint that he was tased immediately as he was trying to comply with the officers' requests. But the record evidence (in the form of the police reports) shows that he was tased thirty minutes after the defendants' arrival. By ignoring those thirty minutes—during which the police contend Hogan was acting erratically—Hogan promotes an artificial division of events that is unhelpful to our determination. Based on the record as a whole,

6

the officers' use of force was reasonable because Hogan posed an immediate threat to the officers.

Hogan's argument that the court didn't view the facts in the light most favorable to him is without merit. First, that Hogan may have been "displaying" the gun to Lambert (rather than "wielding" it) doesn't undermine the threat he posed to the officers who arrived on scene. *Graham* asks the court to consider the totality of the circumstances facing the officers. In this case, the undisputed facts show that officers were lured to a house with a false police report and threatened by an armed man in an agitated state. Likewise, the fact that the backup officers didn't see the gun is irrelevant. They knew Hogan had a gun, and that he had not relinquished it.

Finally, Hogan's allegation that he intended to turn the gun over, without more, is insufficient. After his initial encounter with Lambert, Hogan submitted no evidence that he behaved in a way that could have communicated his intent to turn over the gun. From the perspective of the defendants, the objective facts demonstrate that Hogan refused to relinquish the gun.

Accordingly, we conclude that the officers' use of their tasers was objectively reasonable and did not violate Hogan's Fourth Amendment rights.[*]

---

[*] Even if tasing Hogan constituted a Fourth Amendment violation, the right at issue was not clearly established. It is not clear from our precedent that a suspect, who is acting erratically and refuses to relinquish his gun has a right not to be tased. *Cf. Armstrong v. Village of Pinehurst*, 810 F.3d 892, 907 (4th Cir. 2016) (establishing right "not to be subjected to tasing while offering stationary and non-violent resistance to a lawful seizure"). The lack of clearly established precedent provides an alternative, independent basis for granting the officers qualified immunity.

7

## III.

Hogan also appeals the denial of his Rule 60(b)(6) motion. He alleges, relying on the same assertions discussed above, that the court committed an error of law by not viewing the facts in the light most favorable to him, the nonmovant. Had the court done so, he argues, it would have found an issue of fact about whether he posed an immediate threat. We affirm the district court's decision.

We review a motion to reconsider pursuant to Rule 60(b)(6) for abuse of discretion. *U.S. v. McRae*, 793 F.3d 392, 401 (4th Cir. 2015). "Where the motion is nothing more than a request that the district court change its mind . . . it is not authorized by Rule 60(b)." *United States v. Williams*, 674 F.2d 310, 312 (4th Cir. 1982).

In this case, the district court didn't abuse its discretion by denying Hogan's 60(b)(6) motion. In his motion, Hogan rehashed the argument that he didn't pose an immediate threat; he did nothing more than ask the court to change its mind, a request outside of the purview of Rule 60(b)(6). We therefore affirm the district court's denial of the 60(b)(6) motion to reconsider.

## IV.

For the reasons given, the district court's judgment is

*AFFIRMED.*