**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 19-7354**

───────────────

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

RODERICK LAMAR WILLIAMS, a/k/a Rox,

        Defendant – Appellant.

───────────────

Appeal from the United States District Court for the Western District of North Carolina, at Statesville.   Kenneth D. Bell, District Judge.   (5:03-cr-00004-KDB-DSC-8; 5:08-cv-00041-KDB)

───────────────

Argued:  October 25, 2022                            Decided:  January 3, 2023

───────────────

Before GREGORY, Chief Judge, and WYNN and THACKER, Circuit Judges.

───────────────

Affirmed by published opinion.  Judge Wynn wrote the opinion, in which Chief Judge Gregory and Judge Thacker joined.

───────────────

**ARGUED:**   Jeffrey Michael Brandt, ROBINSON & BRANDT, PSC, Covington, Kentucky, for Appellant.  Elizabeth Margaret Greenough, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:** William T. Stetzer, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

───────────────

WYNN, Circuit Judge:

Roderick Lamar Williams filed a Federal Rule of Civil Procedure 60(b)(3) motion for relief from the district court's denial of his 28 U.S.C. § 2255 motion to vacate his conviction. The district court denied the Rule 60(b)(3) motion and Williams appealed. He argues that the district court erred in finding that his Rule 60(b)(3) motion, filed three and a half years after the district court's § 2255 order, was not entitled to equitable tolling. Because we conclude that Rule 60(b)(3)'s one-year time limit cannot be equitably tolled, we affirm the district court's decision.

## I.

In 2003, the Government indicted Williams and several co-conspirators on drug and firearm charges. At trial in 2004, witnesses testified that Williams was a member of a drug-trafficking organization that operated in and out of North Carolina. Williams traveled frequently out of state and out of country to purchase large amounts of cocaine to bring back to North Carolina, where it was prepared, packaged, and distributed.

Andy Garcia Torres was one of Williams's drug suppliers. Garcia Torres testified that on July 25, 2002, he had a deal to sell cocaine to Williams and Williams's co-conspirator, Phillip Morrison, but that Williams and Morrison robbed Garcia Torres and his associates instead. As Williams and Morrison fled, an associate of Garcia Torres fired at the two men with a .9-millimeter handgun, striking both. Williams dropped a plastic bag containing some of the stolen cocaine. Officers testified that they recovered the bag and found a bloodstain on it, and they sent the bag to the North Carolina State Bureau of Investigation ("SBI") for testing.

2

In 2003, forensic analyst Brenda Bissette conducted a DNA analysis of the blood and later testified at trial that the profile of the bloodstain matched with Williams's profile. The blood evidence—and Bissette's involvement in testing it—form the central focus of Williams's legal challenge here.

In 2004, a jury found Williams guilty on all counts: conspiracy to possess with intent to distribute powder and crack cocaine, possession with intent to distribute powder cocaine, and two counts of possession of a firearm in furtherance of a drug-trafficking crime. The court sentenced Williams to a total effective sentence of life imprisonment plus 360 months, applying an enhancement because of his involvement in an uncharged homicide. This Court affirmed. *United States v. Williams*, 225 F. App'x 151 (4th Cir. 2007) (per curiam).

In May 2008, Williams filed a timely 28 U.S.C. § 2255 motion. He argued, as relevant here, that his trial counsel had been ineffective by failing to hire an independent expert to test the blood evidence. Over the ensuing years, he moved to supplement his § 2255 motion and to request additional discovery numerous times, arguing—among other issues—that the blood evidence was unreliable. He provided several reasons for this assertion: that an audit had revealed troubling cases at SBI from 1986 to 2002 where analysts withheld or distorted evidence, including cases involving Bissette; that Bissette had swapped DNA profiles between a victim and a suspect in an unrelated case during the same time period she analyzed evidence in Williams's case; and that Williams's newly hired expert believed the blood evidence may have been mishandled. In opposing these various motions, the Government argued that "there is no evidence that the blood stain was

3

tainted or that the evidence confirming that it was [Williams]'s blood on the bag was unreliable." J.A. 143.[1] On October 9, 2012, the district court denied Williams's § 2255 motion.

Nearly four years later, on July 5, 2016, Williams filed a Rule 60(b)(3) motion for relief from judgment, alleging that the Government had made several material misrepresentations during the original § 2255 proceedings that prevented him from fully and fairly presenting his case. He argued that the Government misrepresented that the DNA analysis was reliable, despite being aware of Bissette's misconduct. As proof of this alleged misconduct, Williams attached several documents from SBI regarding Bissette that he had obtained eight months earlier. The documents revealed a number of errors Bissette had committed during her time with SBI: in 1999, she misread a DNA sequence on a proficiency test; in 2002 and 2003, she twice mistakenly returned evidence by packaging it for the wrong case; and in 2003, she inadvertently switched tubes containing DNA standards from a victim and a suspect in another case, leading to an incorrect match.[2] Before the motion was ruled upon, the case was reassigned to a new judge.

---

[1] Citations to the "J.A." refer to the parties' Joint Appendix filed in this appeal.

[2] In 2010, Williams had alleged that Bissette "switched the known DNA sample profiles" of a suspect and victim in July 2003. District Ct. Dkt. No. 54-3. He identified the suspect in the case by name, Leslie Lincoln, as well as other factual details, such as how the mistake was discovered by court order and that Bissette had retired during a subsequent inquiry. Likewise, his expert also mentioned the DNA switch in his report. It's unclear if they learned of this information from the news or some other source because neither Williams nor his expert provided any supporting documents. Then, five years later, Williams received internal SBI documents from an attorney, dated from 2005, that confirmed the switch-up. This was the evidence he relied on for his Rule 60(b)(3) motion.

4

The district court construed Williams's motion as an unauthorized, successive § 2255 motion and dismissed it. This Court reversed, holding that Williams had filed a Rule 60(b)(3) motion, rather than an unauthorized § 2255 motion. *United States v. Williams*, 753 F. App'x 176, 177 (4th Cir. 2019) (per curiam). Moreover, because Rule 60(b)'s one-year time limit was an affirmative defense, rather than a jurisdictional bar, we held that Williams should have the opportunity to argue for his motion's timely filing below. *Id.* at 178. On remand, the case was once again reassigned to a new judge. The parties briefed the timeliness issue, with the Government asserting the one-year time limit as a defense, and the district court again denied Williams's motion. The court held that Williams's motion had been untimely filed beyond Rule 60(b)'s one-year deadline, that he was not entitled to tolling, and that his motion failed on the merits as well. Williams appealed.

In 2022, Williams's sentence was reduced twice—first pursuant to the First Step Act and then based on Williams's motion for a reduction of his sentence under 18 U.S.C. § 3582(c)(1). His effective sentence is now 360 months of imprisonment for two counts, to be served concurrently, followed by two consecutive 60-month sentences of imprisonment for two other counts.

## II.

The questions Williams put before us in this appeal are whether he is entitled to equitable tolling for his Rule 60(b)(3) motion, and if so, whether he succeeds on the merits of his claim. While we are concerned by the Government's representations during Williams's original § 2255 proceedings, we cannot answer either question on appeal,

5

because upon our de novo review of this issue of law, *see Rouse v. Lee*, 339 F.3d 238, 248 (4th Cir. 2003) (en banc), we hold that Rule 60(b)(3)'s one-year time limit is a mandatory claim-processing rule that cannot be tolled.[3]

Under Rule 60, a court may provide relief from an order or judgment for six categories of enumerated reasons. Fed. R. Civ. P. 60(b)(1)–(6). One such category is relief because of "fraud . . . , misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). All Rule 60 motions must be filed "within a reasonable time." Fed. R. Civ. P. 60(c)(1). But for three categories of Rule 60(b) motions—including a motion based on fraud or misrepresentation under Rule 60(b)(3)—the Rule specifies that they must be filed "no more than a year after the entry of the judgment or order or the date of the proceeding." *Id.* To be sure, the one-year limit is an *outer* limit of what may be timely; indeed, we have found a delay of only three and a half months unreasonably long for a Rule 60(b)(3) motion where there was "no valid reason [] given for the delay." *McLawhorn v. John W. Daniel & Co.*, 924 F.2d 535, 538 (4th Cir. 1991).

As we have previously recognized, "this one year limit balances the competing interests of relieving an aggrieved party from the hardships of an unjustly procured decision

---

[3] This Court has not yet granted a certificate of appealability ("COA") in this case. And we need not do so here, where we affirm the denial of Williams's Rule 60(b)(3) motion only on timeliness grounds, which are not "sufficiently connected to the merits of the underlying habeas proceeding" to require a COA. *United States v. McRae*, 793 F.3d 392, 399–400 (4th Cir. 2015) (holding that no COA is required for the appeal of a dismissal of a Rule 60(b) motion on jurisdictional grounds); *see also Harbison v. Bell*, 556 U.S. 180, 183 (2009) (ruling that COA requirement only "governs final orders that dispose of the merits of a habeas corpus proceeding").

against the deep '[r]espect for the finality of judgments . . . engrained in our legal system.'" *Fox ex rel. Fox v. Elk Run Coal Co.*, 739 F.3d 131, 135 (4th Cir. 2014) (quoting *Great Coastal Express, Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 675 F.2d 1349, 1354 (4th Cir. 1982)). Accordingly, "the Rule suggests that equitable considerations prevail in such cases for one year [but] the interest in finality . . . prevails thereafter." *Great Coastal Express*, 675 F.2d at 1355.

Williams filed his motion pursuant to Rule 60(b)(3), based on the Government's alleged misrepresentations during his habeas proceedings. There is no question that he filed his motion more than three and a half years after the district court denied his § 2255 motion, i.e., more than two and a half years after the one-year time limit expired. Nonetheless, he argues that the Rule 60(b)(3) time limit should be equitably tolled based on the extraordinary circumstances of his case. The Government argues that the time limit in Rule 60(b)(3) is a mandatory claim-processing rule that cannot be tolled when it is properly invoked.

The issue of whether Rule 60(b)(3)'s time limit is a mandatory claim-processing rule is one of first impression before this Court. We ventured the furthest on the issue in *United States v. McRae*, where we clarified that Rule 60(b)'s time limit "is an affirmative defense, not a jurisdictional bar." 793 F.3d at 401 (citation omitted). But that does not answer the question presented here; *McRae* only makes clear that a party may forfeit the

7

timeliness defense by not properly raising it. *See id.* Here, of course, the Government made no waiver; it argued below that Williams's motion was untimely filed.[4]

And simply because Rule 60(b)'s time limit is not jurisdictional does not mean that a court may dispense with it, even for good cause. "The mere fact that a time limit lacks jurisdictional force . . . does not render it malleable in every respect." *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714 (2019). "Some claim-processing rules are 'mandatory'" and therefore "unalterable if properly raised by an opposing party." *United States v. Marsh*, 944 F.3d 524, 529 (4th Cir. 2019) (quoting *Lambert*, 139 S. Ct. at 714). For such rules, even equitable tolling cannot be applied to "forgive a late filing." *Id.* at 530.

The Supreme Court and this Court have recently examined which claim-processing rules are mandatory and therefore preclude an equitable approach. First, in *Nutraceutical Corp. v. Lambert*, the Supreme Court held that Federal Rule of Civil Procedure 23(f)'s 14-day appeal deadline was mandatory and not subject to equitable tolling. 139 S. Ct. at 714–15. Then in *United States v. Marsh*, we likewise held that Federal Rule of Appellate Procedure 4(b)'s 14-day criminal appeal deadline was also mandatory and could not be tolled. 944 F.3d at 531. The "key," we explained in *Marsh*, was in the text of the rule and

---

[4] Williams asks that we consider waived the Government's argument that Rule 60(b)'s time limit is a mandatory claim-processing rule, because before the district court, the Government only argued that Williams's motion was untimely filed, not that equitable tolling was inapplicable to Rule 60(b). But as Williams concedes in his brief, we may affirm on any ground supported by the record. *United States v. McHan*, 386 F.3d 620, 623 (4th Cir. 2004). And, importantly, while the Government *could* have waived its timeliness argument by failing to raise it below, as noted, the Government clearly asserted that defense as required by *McRae*. *See* 793 F.3d at 401.

8

whether it "leaves room for such flexibility." *Id.* at 530 (quoting *Lambert*, 139 S. Ct. at 714). Drawing from *Lambert*, we explained that the mere fact that a procedural "rule is 'phrased in an unqualified manner' . . . is not enough to show that it is mandatory." *Id.* (quoting *Lambert*, 139 S. Ct. at 715). But the rule's relationship with other rules could "speak directly to the issue of [the claim-processing rule]'s flexibility." *Id.* (quoting *Lambert*, 139 S. Ct. at 715).

The facts of both cases help illustrate the proper analysis. In *Marsh*, we considered Federal Rule of Appellate Procedure 4(b), which requires a criminal defendant to file a notice of appeal "within 14 days" of the entry of judgment or order appealed from. Fed. R. App. P. 4(b)(1)(A). That time limit alone did not prove the rule was inflexible. *See Marsh*, 944 F.3d at 530. But critically, another rule's treatment of Rule 4(b) did. *See id.* Federal Rule of Appellate Procedure 26 governs the various deadlines for filings in the courts of appeals and gives courts broad discretion to "extend the time prescribed by these rules." Fed. R. App. P. 26(b). Yet Rule 26 expressly excepts Rule 4(b) notices of appeal from a court's discretion, explaining that "a court *may not extend* the time to file [] a notice of appeal (except as authorized in Rule 4)." Fed. R. App. P. 26(b)(1) (emphasis added). And, while Rule 4 allows for a potential extension, that extension is "not to exceed 30 days." Fed. R. App. P. 4(b)(4). "The upshot, then, is a maximum period of 44 days after judgment in which to file a criminal appeal under Rule 4(b)." *Marsh*, 944 F.3d at 531.

Likewise, in *Lambert*, the Supreme Court found that Federal Rule of Civil Procedure 23(f)'s 14-day deadline for filing an appeal from a grant or denial of class certification was also inflexible. Like Rule 4(b), Rule 23(f) was also excepted from a

9

court's general discretion to extend deadlines under Rule 26(b). *Lambert*, 139 S. Ct. at 715. Under Rule 26, once again, a court can generally grant extensions of time, but it cannot extend the time to file a notice of appeal, except in certain scenarios, which don't include Rule 23. *See* Fed. R. App. P. 26(b)(1)–(2). Thus, in both cases, Rule 26's relationship with the claim-processing rule at issue indicated no flexibility. The *Lambert* Court concluded that "[t]he Rules . . . express a clear intent to compel rigorous enforcement" of the claim-processing rule, "even where good cause for equitable tolling might otherwise exist." *Lambert*, 139 S. Ct. at 715.

*Marsh*, for its part, presented particularly compelling reasons for granting equitable tolling to the notice-of-appeal deadline. In that case, Marsh pleaded guilty to several charges, and at sentencing, the district court failed to advise Marsh of his right to appeal his sentence. *Marsh*, 944 F.3d at 527. This was a clear violation of Federal Rule of Criminal Procedure 32, which requires that the court "advise the defendant of any right to appeal the sentence." Fed. R. Crim. P. 32(j)(1)(B). Because of the error, Marsh filed his *pro se* appeal 283 days after the entry of judgment—well after the 14-day time limit. *Marsh*, 944 F.3d at 527. But even with the "gravity of the stakes" of a criminal appeal, this Court could not excuse a late filing. *Id.* at 531. "When the 'rules invoked'—whether criminal or civil—'show a clear intent to preclude tolling, courts are without authority to make exceptions'—even in cases where a litigant may have been 'reasonably mistaken, or otherwise deserving.'" *Id.* (quoting *Lambert*, 139 S. Ct. at 714).

Rule 60(b)(3)'s time limit operates similarly to the deadlines in *Marsh* and *Lambert*. As explained above, Rule 60(c)(1) expressly sets a one-year outer time limit for motions

10

brought under subsections (b)(1)–(3), including motions based on fraud or misrepresentation.

Critically, Rule 60(b)(3), just like Rule 4(b) in *Marsh* and Rule 23(f) in *Lambert*, is singled out by another rule for inflexible treatment. Federal Rule of Civil Procedure 6 governs computing time periods for filings and provides a court discretion to extend those periods. *See* Fed. R. Civ. P. 6(b)(1). Although a court generally may extend time limits upon a showing of "good cause" under Rule 6, that Rule explicitly prohibits a court from extending the time to act under Rule 60(b): "A court must not extend the time to act under Rule[] . . . 60(b)." Fed. R. Civ. P. 6(b)(2). Because Rule 6 singles out Rule 60(b) for inflexible treatment, it expresses a "clear intent to compel rigorous enforcement" of Rule 60(b)'s one-year outer time limit for claims brought pursuant to Rule 60(b)(1)–(3). *Lambert*, 139 S. Ct. at 715. Based on the principles laid out in *Lambert* and *Marsh*, we find this treatment of Rule 60(b) dispositive, leaving us without discretion to extend Rule 60(b)'s one-year time limit for equitable reasons, whatever their merit.

We are not alone in reaching this conclusion. In fact, all other circuit courts that have considered this issue have also concluded that Rule 60(b)'s one-year time limit is mandatory. *See Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000) (stating that Rule 60(b)'s time limit is "absolute" (citation omitted)); *In re G.A.D., Inc.*, 340 F.3d 331, 334 (6th Cir. 2003) ("Regardless of circumstances, no court can consider a motion brought under Rule 60(b)(1), (2), or (3) a year after judgment."); *In re Cook Med., Inc*, 27 F.4th 539, 543 (7th Cir. 2022) (refusing to allow an extension of Rule 60(b)'s one-year time limit for equitable reasons "[n]o matter the potential merits of the plaintiffs' excusable neglect

11

arguments," because it was a mandatory claim-processing rule); *In re Rumsey Land Co., LLC*, 944 F.3d 1259, 1277 (10th Cir. 2019) (stating that Rule 60(b)'s time limit is absolute and "not subject to tolling").

Nor can we find relief for Williams elsewhere. True, Rule 60(b)(6)—which is not subject to the one-year outer time limit—permits district courts to grant relief for "any other reason that justifies" such relief. Fed. R. Civ. P. 60(b)(6). But as the Supreme Court has explained, the grounds for Rule 60(b)(6) are "mutually exclusive" from the grounds of other Rule 60(b) motions, thus prohibiting parties who "failed to take timely action" on one ground from "resorting to subsection (6)" to avoid the one-year limit. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993); *see also Kemp v. United States*, 596 U.S. __, __, 142 S. Ct. 1856, 1861 (2022) ("This last option is available only when Rules 60(b)(1) through (b)(5) are inapplicable."). As such, Rule 60(b)(6) is available only in "extraordinary circumstances." *Aikens v. Ingram*, 652 F.3d 496, 500 (4th Cir. 2011) (en banc).

And in any event, Williams did not argue for relief under Rule 60(b)(6), either before the district court or on appeal.[5] This forfeiture would generally end our review, *see Greenlaw v. United States*, 554 U.S. 237, 243–44 (2008), though we sometimes depart

---

[5] Indeed, Williams originally filed a Rule 60(b)(6) motion raising separate issues. The district court denied it at the same time it denied his Rule 60(b)(3) motion, construing both as unauthorized, successive § 2255 motions. But he did not challenge the Rule 60(b)(6) ruling on his first appeal before us, and this Court held that he forfeited appellate review of that issue and affirmed that part of the district court's order. *Williams*, 753 F. App'x at 177.

12

from the strict application of such rules "to protect a *pro se* litigant's rights," *see id.* at 244. But while Williams appeared *pro se* before the district court, he has been represented by counsel on appeal. Thus, we consider any such argument forfeited here.

III.

As in the criminal proceeding in *Marsh*, we recognize the gravity of the stakes in habeas proceedings. Yet we do not believe that equitable tolling can apply to motions brought under Rule 60(b)(3). And because Williams filed his motion more than three and a half years after the applicable district court order, the court correctly held that his motion was untimely filed. For the foregoing reasons, we affirm the district court's denial of Williams's Rule 60(b)(3) motion.

*AFFIRMED*