**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 22-4**

———————————

STEVEN VERNON BIXBY,

        Petitioner – Appellant,

   v.

BRYAN P. STIRLING, Commissioner, South Carolina Department of Corrections; LYDELL CHESTNUT, Deputy Warden, Broad River Correctional Institution,

        Respondents – Appellees.

------------------------------

LEGAL ETHICS PROFESSORS,

        Amici Supporting Appellant.

———————————

Appeal from the United States District Court for the District of South Carolina, at Florence. Bruce H. Hendricks, District Judge. (4:17-cv-00954-BHH)

———————————

Argued: September 22, 2023               Decided: November 27, 2023
                Amended: January 5, 2024

———————————

Before DIAZ, Chief Circuit Judge, and AGEE and HARRIS, Circuit Judges.

———————————

Vacated and remanded with instructions by published opinion. Judge Agee wrote the opinion in which Chief Judge Diaz and Judge Harris joined.

———————————

**ARGUED:** David Weiss, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. William Joseph Maye, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellees. **ON BRIEF:** John G. Baker, Federal Public Defender, Gretchen L. Swift, Assistant Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina; Joshua Snow Kendrick, KENDRICK & LEONARD, P.C., Greenville, South Carolina, for Appellant. Alan Wilson, Attorney General, Donald J. Zelenka, Deputy Attorney General, Melody J. Brown, Senior Assistant Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellees. Joseph B. Warden, Wilmington, Delaware, Daniel A. Tishman, FISH & RICHARDSON P.C., Washington, D.C., for Amici Curiae.

---

2

AGEE, Circuit Judge:

After the district court denied Steven Vernon Bixby's initial 28 U.S.C. § 2254 petition, he obtained new counsel and filed a motion to reopen that judgment under Federal Rule of Civil Procedure 60(b). He argued that exceptional circumstances warranted this relief because his original § 2254 counsel had, in effect, abandoned him by submitting a § 2254 petition that omitted several potentially meritorious issues and inadequately presented the issues that had been raised. He asked the court to reopen the judgment and allow him to file additional briefing and new claims.

The district court concluded that Bixby's motion was not a true Rule 60(b) motion. Rather, Bixby was attempting to use Rule 60(b) to circumvent the statutory limits placed on second or successive § 2254 petitions. Recognizing that it would lack jurisdiction to consider a second § 2254 petition, the district court denied Bixby's motion without considering its merits.

Bixby now appeals, and for the reasons set out below, we agree with the district court's conclusion that it lacked jurisdiction to consider Bixby's Rule 60(b) motion because he effectively sought to file a second or successive § 2254 petition, something that a district court cannot authorize. Because we also conclude that the district court should have dismissed Bixby's motion rather than deny it, we vacate the district court's order and remand with instructions to dismiss.

3

I.

A.

Amidst a dispute involving the state of South Carolina's claim to a right of way across the Bixby family property, Bixby and his father shot and killed two law enforcement officers. *State v. Bixby*, 698 S.E.2d 572, 535–39 (S.C. 2010).

After Bixby and his parents learned of the state's plan to expand a road across their property, they resisted construction efforts and responded with threats of violence. *Id.* at 536. So state officials scheduled a meeting with the Bixbys to discuss the construction plans, which they asked law enforcement to mediate. *Id.* at 536–37. The day before the meeting, Bixby told others that he and his family had been planning an armed altercation for some time, that "[t]omorrow" they intended to shoot "anybody [who] comes in the yard," and that "if the shooting starts I won't come out alive." *Id.* at 577.

The next day, when law enforcement approached the Bixby home, Bixby and his father shot and killed two officers. In the hours that followed, Bixby and his father engaged in an armed stand-off with additional law enforcement officers, but surrendered late in the evening after law enforcement "returned fire and shot tear gas into the home." *Id.* at 578.

For his role in these events, Bixby was indicted in South Carolina state court on multiple counts, and the State sought the death penalty for the two murders. *Id.* at 578. A

4

jury found Bixby guilty on all counts and recommended a sentence of death for each murder. *Id.* The trial judge agreed and sentenced Bixby to death. *Id.*[1]

On direct appeal, the Supreme Court of South Carolina affirmed the convictions and imposition of the death penalty. *Id.* at 578–89. Two of the five justices dissented on two issues implicating constitutional concerns related to sentencing. *Id.* at 589–91 (Pleicones, J., dissenting). The dissenting justices would have vacated the death sentences and remanded for a new sentencing proceeding. *Id.*

Bixby later filed a timely state petition for post-conviction relief (PCR), which the PCR court denied. The Supreme Court of South Carolina denied certiorari.

B.

Bixby, through counsel, filed documents indicating an intent to file a federal petition for writ of habeas corpus under § 2254 and requested that counsel be appointed to represent him during those proceedings. A magistrate judge granted Bixby's request for appointed counsel, selecting two attorneys from the District of South Carolina's Criminal Justice Act Death Penalty Panel Attorney List, Miller Williams Shealy, Jr., and William H. Monckton, VI (collectively "initial § 2254 counsel"). They prepared a § 2254 petition setting out twenty-nine enumerated claims, all but one of which had been raised in the state PCR proceedings. Although the petition was seventy-six pages in length, the first ten pages reflected responses to the form § 2254 petition provided to pro se petitioners and recounted

---

[1] Charges were also brought against Bixby's parents relating to these events. His father was found incompetent to stand trial and he died in prison. His mother was convicted of being an accessory before the fact to murder and criminal conspiracy. She was sentenced to life imprisonment and has also since died.

basic case information and procedural history. The next sixty-one pages were copied and pasted from the state-court decision and PCR filings, which recounted the factual and procedural narrative as well as background information related to the investigation and Bixby's social history. The final substantive pages raised issues that had been brought and rejected in the state PCR proceedings. Instead of providing any analysis or argument about these issues, though, the petition simply "incorporate[d] by reference" the arguments relating to those issues that had been presented in the state PCR filings. J.A. 1320. The initial § 2254 petition also identified one new issue for the district court's consideration: whether trial counsel had provided ineffective assistance based on a purported failure to protect Bixby's rights under the Americans with Disabilities Act (ADA). With the district court's permission, initial § 2254 counsel filed a supplemental eight-page memorandum laying out arguments in greater detail supporting that issue. Later, in response to the State's 116-page memorandum supporting summary judgment as to all claims, initial § 2254 counsel filed a nine-page memorandum asserting that the petition had established adequate grounds for a hearing, particularly as to the ADA-related claim.

A magistrate judge prepared a report and recommendation (the MR&R) on the § 2254 petition. Before addressing the merits of the summary judgment motion, the magistrate judge observed that the § 2254 petition had failed to frame the issues in the light necessary to obtain relief under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). This Act requires that federal courts review claims by state prisoners to determine "whether the state court's ruling on [the issues] is the result of unreasonable factual findings or an unreasonable application of federal law." *Bixby v. Stirling*, No. 4:17-

6

cv-00954-BHH-TER, 2019 WL 8918824, at *17 (D.S.C. Jan. 11, 2019) (citing § 2254(d)). Because state prisoners can only obtain relief upon such a showing, the magistrate judge undertook that analysis for each of Bixby's claims and recommended granting summary judgment to the State and denying relief on all claims.

In response to the MR&R, Bixby's initial § 2254 counsel filed a seventeen-page set of objections.

The district court adopted the MR&R, granted summary judgment to the State, and denied habeas relief. But the district court also chastised Bixby's initial § 2254 counsel, observing that the § 2254 "[p]etition is largely a conglomeration of" "others' writing[s]" and failed to discuss how to apply § 2254(d)'s standards to the issues raised. *Bixby v. Stirling*, No. 4:17-cv-954-BHH, 2021 WL 783660, at *5 (D.S.C. Mar. 1, 2021). Despite these concerns, however, the district court engaged in an extensive, § 2254-centered analysis of the claims Bixby had raised, issuing a thorough decision before denying relief.

Bixby then filed a Rule 59(e) motion for reconsideration, which the district court denied in part and granted in part. The limited grant related solely to the district court's failure to rule on whether a certificate of appealability (COA) should be issued, as required by 28 U.S.C. § 2253. The district court then amended its order to deny Bixby a COA as to any claim.

Bixby appealed the denial of his initial § 2254 petition and new counsel was appointed to represent him before this Court. But we denied Bixby a COA and dismissed his appeal. *Bixby v. Stirling*, No. 21-5, 2022 WL 4494130 (4th Cir. Apr. 29, 2022), *cert. denied*, 143 S. Ct. 2468 (2023) (mem.).

C.

While Bixby's appeal from the denial of his § 2254 petition was pending before this Court, the new counsel who had been appointed to represent him in that appeal moved to be appointed to represent him "for any remaining actions required in the district court and any subsequent and available post-conviction process." Motion for Appointment of Counsel at 2, *Bixby*, No. 4:17-cv-00954-BHH, ECF No. 153. The district court granted the motion "for the limited purpose of filing in this Court a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure." Text Order, *Bixby*, No. 4:17-cv-00954-BHH, ECF No. 155.

Thereafter, Bixby's newly appointed § 2254 counsel (current counsel in this case) filed a Rule 60(b) motion in the district court seeking relief from the final judgment denying his § 2554 petition. Bixby argued that he did not receive "meaningful, ethical representation," J.A. 1826, from his initial § 2254 counsel and thus satisfied Rule 60(b)(6)'s "any other reason justifying relief" standard, J.A. 1834.[2] Specifically, he contended that the initial § 2254 counsel had essentially abandoned him by filing a defective § 2254 petition that failed to raise potentially meritorious direct appeal claims or make other arguments to obtain relief under § 2554(d). Bixby asked the court to grant relief

_____

[2] Bixby's Rule 60(b) motion also requested the district court grant relief pursuant to Rule 60(b)(1)'s "excusable neglect" standard. On appeal, Bixby has not raised a Rule 60(b)(1) claim. Thus, he abandoned the issue. *See A Helping Hand, LLC v. Baltimore Cnty.*, 515 F.3d 356, 369 (4th Cir. 2008).

8

so that the new § 2254 counsel could investigate and then provide new briefing to raise "additional claims as may be appropriate." J.A. 1851.[3]

The district court denied Bixby's motion. Looking to the text of Rule 60(b)(6), § 2254(d), and Supreme Court and out-of-circuit cases analyzing the interplay between the two provisions, the court concluded that Bixby's motion was not a true Rule 60(b) motion. Because "[t]he motion repeatedly indicate[d] an intent to raise new grounds for habeas relief," the district court concluded it was a § 2254 petition "couched" in the language of Rule 60(b) so as to get around the statutory limits on second and successive § 2254 petitions. *Bixby v. Stirling*, No. 4:17-cv-954-BHH, 2022 WL 2905509, at *3 (D.S.C. July 22, 2022).  In the court's view, "where the [Rule 60(b)] motion premises a right to relief on habeas counsel's substandard performance in advocating the § 2254 standard, it clearly implicates, albeit indirectly, the Court's prior adjudication of [Bixby]'s habeas claims on the merits and seeks a second determination of those claims, along with the new claims, after better advocacy." *Id.* It concluded that although labeled as a Rule 60(b) motion, Bixby's motion "is in substance an unauthorized successive habeas petition over which [the district court] lack[ed] jurisdiction" given that only this Court has the power to authorize second or successive § 2254 petitions. *Id.* at *3–4. The district court then denied Bixby's Rule 60(b) motion and denied a COA. *Id.* at *4.

---

[3] The motion did not specify what claims would be added, but alluded to adding claims related to the two issues that had divided the South Carolina Supreme Court in his direct appeal as well as unknown claims under *Martinez v. Ryan*, 566 U.S. 1 (2012).

9

Bixby noted a timely appeal, asking this Court to grant a COA from the district court's denial of his Rule 60(b) motion. We issued a briefing order and calendared the case for oral argument.

II.

The dispositive issue in this appeal is whether the district court erred in concluding that it lacked jurisdiction to consider Bixby's Rule 60(b) motion because he sought to present an unauthorized second § 2254 petition. We review de novo whether the district court properly construed Bixby's Rule 60(b) motion as an unauthorized second habeas petition. *See United States v. McRae*, 793 F.3d 392, 397 (4th Cir. 2015). But before turning to Bixby's specific arguments, we discuss the relevant legal context that forms the backdrop for this case.

A.

AEDPA establishes strict requirements for state and federal prisoners seeking a federal writ of habeas corpus. State prisoners' claims that they are being held "in custody in violation of the Constitution or laws or treaties of the United States" must be brought under 28 U.S.C. § 2254. § 2254(a).

Applicants may file one timely § 2254 petition without seeking prior authorization, but after having done so, they are barred from bringing additional claims in a "second or successive habeas corpus application under section 2254" unless the claims meet certain substantive requirements and the petitioner has first obtained a COA from the appropriate

10

court of appeals. § 2244.[4] The rules for obtaining authorization are also rigid, and largely

irrelevant to our review. Of note, however, in addition to requiring petitioners to obtain

authorization from the appropriate court of appeals before filing a second or successive

§ 2254 petition in district court, § 2244 also makes clear that district courts must ("shall")

dismiss any second or successive § 2254 petition or claim that the court of appeals has not

authorized. § 2244(b).

## B.

While AEDPA specifically governs a prisoner's habeas petition, Rule 60 of the

Federal Rules of Civil Procedure governs civil actions of all kinds, permitting relief from

a district court's judgment or order under certain circumstances. Subsection (b) of that rule

delineates five specified grounds for relief ranging from mistake to fraud. *See* Fed. R. Civ.

P. 60(b)(1)–(5). A sixth catch-all provision permits district courts to grant relief for "any

other reason that justifies" it. Fed. R. Civ. P. 60(b)(6). Although Rule 60(b)(6) "provides

the court with a grand reservoir of equitable power to do justice in a particular case," *Reid

v. Angelone*, 369 F.3d 363, 374 (4th Cir. 2004) (cleaned up), the Supreme Court has

cautioned that it requires "extraordinary circumstances [to] justify reopening" a judgment,

*Kemp v. United States*, 142 S. Ct. 1856, 1861 (2022) (cleaned up). Thus, despite Rule

60(b)(6)'s "open-ended language," the Supreme Court has "firmly reined in" the

---

[4] The substantive limits on a second or successive § 2254 petition are not at issue in this case, nor has Bixby asserted that the claims he seeks to add would satisfy these requirements.

11

provision's scope by requiring extraordinary circumstances to invoke it. *Moses v. Joyner*, 815 F.3d 163, 168 (4th Cir. 2016).

C.

Sometimes petitioners attempt to use Rule 60(b) as a means to present new claims or arguments in favor of habeas relief that were not presented in their initial federal habeas petition. And some petitioners can satisfy Rule 60(b)'s criteria for when a judgment can be reopened even though they cannot satisfy § 2244's restrictions on when a second or successive habeas petition can be filed. Courts have grappled over this tension between Rule 60(b) and § 2244.

In *Gonzalez v. Crosby*, 545 U.S. 524 (2005), the Supreme Court considered the interplay between AEDPA's limits on second or successive federal habeas petitions and Rule 60(b) relief. It cautioned that Rule 60(b)(6) motions could not be used as a vehicle for "'circumvent[ing] the requirement[s]' for securing relief under AEDPA." *Moses*, 815 F.3d at 168 (second alteration in original) (quoting *Gonzalez*, 545 U.S. at 532). The Supreme Court therefore recognized that as between AEDPA and Rule 60(b), the balance weighs heavily in favor of AEDPA finality. *Richardson v. Thomas*, 930 F.3d 587, 595 (4th Cir. 2019) ("The *Gonzalez* analysis of the interplay between § 2244(b) and Rule 60(b) . . . reflects the unquestionable primacy of § 2244(b)."). [5] For this reason, the Supreme Court

---

[5] That's no surprise, in part, because statutes take priority over the federal rules. *Gonzalez*, 545 U.S. at 529 ("Rule 60(b), like the rest of the Rules of Civil Procedure, applies in habeas corpus proceedings under 28 U.S.C. § 2254 only 'to the extent that [it is] not inconsistent with' applicable federal statutory provisions and rules. 28 U.S.C. § 2254 Rule 11; *see* Fed. R. Civ. P. 81(a)(2)." (alteration in original) (footnote omitted)).

noted that Rule 60(b)(6)'s requisite "extraordinary circumstances" would "rarely occur in the habeas context." *Gonzalez*, 545 U.S. at 535. So, although the Supreme Court recognized that Rule 60(b) motions can be brought in habeas cases, it warned that a court could only grant such motions when doing so would not be inconsistent with AEDPA. *Id.* at 530–35.

Throughout *Gonzalez*, the Supreme Court remained alert to the expectation that artfully worded Rule 60(b) motions would require courts to look behind both the title and the text to the motion's objective to determine whether it aimed to end-run AEDPA. For that reason, the Court instructed that a district court's first task when presented with a Rule 60(b) motion in a habeas case must be to consider whether the filing "is in substance a successive habeas petition and [thus] should be treated accordingly." *Id.* at 531.

To aid in this process, the Supreme Court provided multiple examples of when a filing labeled as a "Rule 60(b) motion" would substantively be a "habeas corpus application" or "at least similar enough that failing to subject it to the same requirements would be 'inconsistent with'" AEDPA. *Id.* The Court observed that some Rule 60(b) motions may attack the district court's prior reasoning or attempt to add "one or more 'claims.'" *Id.* at 530–31. Or they might indirectly attempt to do the same by asserting that due to an attorney or party's "excusable neglect," the initial "habeas petition had omitted a claim of constitutional error, and seek leave to present that claim." *Id.* at 531. Likewise, Rule 60(b) movants may argue that a post-judgment change in law warrants relief so as to present that newly available claim. *Id.* In each of these scenarios, the Supreme Court recognized that the motions sounded substantively in habeas because they "attack[ed] the federal court's previous resolution of a claim *on the merits*, since alleging that the court

13

erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief." *Id.* at 532 (footnote omitted). The Supreme Court instructed that filings of this ilk cannot proceed under the mantle of a Rule 60(b) motion and instead must be subjected to AEDPA's requirements. *Id.*

The Supreme Court contrasted disguised habeas petitions from "true" Rule 60(b) motions in the habeas context. A "true" Rule 60(b) motion would not attack the resolution of a prior § 2254 petition on the merits. Instead, a "true" Rule 60(b) motion would challenge "some defect in the integrity of the federal habeas proceedings." *Id.* at 532. As examples, the Court cited a motion that asserts that "a previous ruling which precluded a merits determination was in error" such as a district court's denial of habeas relief for "failure to exhaust, procedural default, or statute-of-limitations bar," *id.* at 532 n.4, or "fraud," *id.* at 532 n.5. It observed that "true" Rule 60(b) motions would not "assert, or reassert, claims of error in the movant's state conviction," and that a motion "challeng[ing] only the District Court's failure to reach the merits" could be considered without running afoul of AEDPA. *Id.* at 538. In further parsing this distinction, the Supreme Court observed that "an attack based on the movant's own conduct[] or his habeas counsel's omissions ordinarily does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably." *Id.* at 532 n.5 (internal citation omitted).

14

D.

1.

With these governing principles firmly in mind, we turn to Bixby's argument that the district court erred in concluding that it lacked jurisdiction to consider his Rule 60(b) motion because the motion sought to reargue and add claims for § 2254 relief. Bixby contends that the district court should not have focused so extensively on whether his Rule 60(b) motion sought a "re-do" of his initial habeas petition because *all* Rule 60(b) motions seek to reopen and reconsider the court's judgment in some form. He further avers that whatever rules customarily forbid Rule 60(b) relief based on a federal habeas counsel's conduct do not preclude relief here because of the extent and nature of his initial § 2254 counsel's errors. As support for this argument, Bixby emphasizes that *Gonzalez* merely cautioned that "ordinarily" claims based on attorney deficiencies would not attack the integrity of the initial habeas proceedings, thus leaving the door open for particularly egregious mistakes to do so, and thus present a "true" Rule 60(b) motion. *Cf. Gonzalez*, 545 U.S. at 531 n.5. He also points to out-of-circuit cases recognizing that Rule 60(b) relief remains available when federal habeas counsel abandons a client.

Bixby maintains that his case falls within *Gonzalez*'s "ordinarily" caveat and this out-of-circuit precedent because his initial § 2254 counsel omitted claims with potential merit and submitted largely copied-and-pasted material without addressing the key legal issues under AEDPA's framework. Thus, he argues that his initial § 2254 counsel's failings constitute a procedural defect in the original proceedings because they prevented the district court from reaching the merits of a claim for relief. As such, he maintains that his

15

motion is a "true" Rule 60(b) motion attacking the integrity of the federal habeas proceeding, that the district court thus had jurisdiction to consider his Rule 60(b) motion, and that this Court should vacate the district court's order and remand for the district court to decide whether his Rule 60(b) motion should be granted on the merits of whether it presents "extraordinary circumstances" warranting relief from the initial judgment denying his § 2254 petition.

2.

Under *Gonzalez*, the type of attorney-error argument Bixby makes in his Rule 60(b) motion "ordinarily" would be treated as a second or successive habeas petition over which the district court lacked jurisdiction. As a threshold observation, the district court's judgment denying the initial § 2254 petition resolved each of Bixby's claims on the merits, thus making it all the more likely that any Rule 60(b) motion seeking to revisit that judgment would be in tension with AEDPA's limits on second or successive habeas petitions. *See Gonzalez*, 545 U.S. at 533 (observing that "[i]f neither the motion itself *nor the federal judgment from which it seeks relief* substantively addresses federal grounds for setting aside the movant's state conviction, allowing the motion to proceed as denominated creates no inconsistency with the habeas statute or rules" (emphasis added)); *Franqui v. Florida*, 638 F.3d 1368, 1371 (11th Cir. 2011) (understanding *Gonzalez* to establish that "[w]hen . . . a federal habeas court has already reached and resolved the merits of a habeas petitioner's earlier asserted claims, we look at a [Rule] 60(b) motion challenging that decision with particular skepticism").

16

The substance of Bixby's Rule 60(b) motion confirms that he "seeks to revisit the federal court's denial *on the merits* of a claim for relief," something that *Gonzalez* repeatedly states "should be treated as a successive habeas petition." 545 U.S. at 534. As *Gonzalez* recognized, "[u]sing Rule 60(b) to present new claims for relief from a state court's judgment of conviction—even claims couched in the language of a true Rule 60(b) motion—circumvents AEDPA's requirement that a new claim be dismissed unless it relies on either a new rule of constitutional law or newly discovered facts" and "[t]he same is true" of a Rule 60(b) motion that attempts to raise new arguments in support of prior claims. *Id.* at 531 (citation omitted). In both circumstances, the movant wants a district court that has already denied relief on the merits to take another look at whether to grant relief on the merits. Bixby's Rule 60(b) motion, which ultimately seeks that very reconsideration, falls squarely within *Gonzalez*'s heartland as a motion that is subjected to AEDPA's restrictions.

This is so even though Bixby's Rule 60(b) motion does not directly present new arguments or claims in favor of § 2254 relief. The Supreme Court's concern about circumventing AEDPA is no less present when a petitioner uses Rule 60(b) as the means for future filings that would circumvent AEDPA than when the motion itself does so. The end result is the same, and impermissible in either case. *Gonzalez* observed how claims "couched in the language of a true Rule 60(b) motion" nonetheless sought the district court's permission to consider new arguments or claims in support of federal habeas relief. *Id.* The inconsistency with AEDPA is the core problem, and the "couch[ing]" to create distance between the Rule 60(b) motion's grounds and how it runs afoul of § 2244's limits is merely an effort to obfuscate that inconsistency. *See id.* at 531–32. Other circuit courts

17

applying *Gonzalez* have recognized the same: "Potential inconsistency with AEDPA looms even where . . . a Rule 60(b) motion does not itself raise new claims for habeas relief, but rather seeks permission to do so in further proceedings." *Franqui*, 638 F.3d at 1371. Under either scenario, "*Gonzalez* tells us that, even though such a motion may not directly assert errors in the petitioner's underlying conviction, it still must be treated as a second or successive petition." *Id.* at 1371–72; *accord Edwards v. Davis*, 865 F.3d 197, 204–05 (5th Cir. 2017) (per curiam) (holding that a Rule 60(b) motion, which claimed that federal habeas counsel abandoned his client by failing to bring additional claims in a § 2254 petition that was denied on the merits, was not a true Rule 60(b) motion because it sought "to re-open the proceedings for the purpose of adding new claims," which "is the definition of a successive claim"); *Post v. Bradshaw*, 422 F.3d 419, 424 (6th Cir. 2005) ("It makes no difference that the motion itself . . . purports to raise a defect in the integrity of the habeas proceedings, namely his [federal habeas] counsel's failure—after obtaining leave to pursue discovery—actually to undertake that discovery; all that matters is that [petitioner] is 'seek[ing] vindication of' or 'advanc[ing]' a claim by taking steps that lead inexorably to a merits-based attack on the prior dismissal of his habeas petition." (alterations in original)).[6]

---

[6] It seems likely that Bixby's proposed Rule 60(b) motion runs afoul of AEDPA in another way as well. AEDPA states that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." § 2254(i); *see also* 28 U.S.C. § 2261(e) (prohibiting the same in the case of prisoners in state custody subject to a capital sentence who have been appointed counsel during their federal habeas petitions). Thus, "a freestanding claim of ineffective assistance of [federal or] state habeas counsel . . . is not a (Continued)

3.

None of Bixby's arguments to the contrary are convincing. At the outset, he argues that this Court should not even reach the question of whether his Rule 60(b) motion is cognizable, and instead should hold only that the district court erred in concluding that it lacked jurisdiction to consider a claim of attorney abandonment. That argument fails because it assumes that the question of the district court's jurisdiction to consider Bixby's Rule 60(b) motion can be untethered from ascertaining whether his particular argument is properly characterized as a "true" Rule 60(b) motion or an unauthorized second or successive federal habeas petition. Because *Gonzalez* instructs that a district court must "first" assure itself of jurisdiction, 545 U.S. at 530, and it does so by assessing the substance of the petitioner's motion, that inquiry necessarily rests on the specific nature of Bixby's arguments. In short, whether Bixby's Rule 60(b) motion is cognizable as such is part and parcel of determining whether the district court correctly determined it lacked jurisdiction over his motion. *See Richardson*, 930 F.3d at 597 ("[U]ntil the district court determines

---

permissible avenue of relief in a federal habeas petition." *Samples v. Ballard*, 860 F.3d 266, 275 (4th Cir. 2017) (citation omitted). Although Bixby does not present a freestanding claim that he is entitled to § 2254 relief on the basis of his initial § 2254 counsel's performance, he *does* argue that he is entitled to "*other relief in*" his § 2254 proceedings (i.e., grant of a Rule 60(b) motion to reopen the judgment denying his § 2254 petition) on that basis. And where AEDPA's limits on available forms of "relief" conflicts with Rule 60(b), *Gonzalez* reiterates that AEDPA controls. This provision bolsters our conclusion that Bixby's Rule 60(b) motion does not present a "true" Rule 60(b) motion. *See Post*, 422 F.3d at 422–24 (citing § 2254(i) and *Gonzalez*'s primacy-of-AEDPA holding as a basis for concluding that "AEDPA denies the federal courts the power to entertain" a petitioner's Rule 60(b) motion predicated on the ineffectiveness or incompetence of federal habeas counsel). Because we dispose of Bixby's claims under other AEDPA provisions, we need not further consider this potential independent bar.

19

whether the Rule 60(b) motion filed by the habeas petitioner is in actuality a disguised § 2244 motion [i.e., a request for authorization to bring a second or successive § 2254 petition], it cannot determine whether it has jurisdiction to . . . decide whether the motion satisfies Rule 60(b)'s requirements of timeliness and extraordinary circumstances.").

Bixby also argues that it's wrong to consider that his motion would cause the district court to reexamine its initial judgment because *every* Rule 60(b) motion ultimately seeks to "reopen" or "reconsider" an earlier judgment. That may be. But however Rule 60(b) operates as a general matter, *Gonzalez* unquestionably restricts the circumstances in which it can be invoked in the habeas context to those motions attacking "some defect in the integrity of the federal habeas proceedings." 545 U.S. at 532. The examples the Court provided overwhelmingly involved circumstances where the district court did not reach a merits determination on the original § 2254 petition and instead relied on some procedural defect or alternative basis for denying relief. *See id.* at 533 & n.6. For example, the Supreme Court pointed to Rule 60(b) motions seeking to "relieve parties from the effect of a default judgment mistakenly entered against them" or "to obtain vacatur of a judgment that is void for lack of subject-matter jurisdiction." *Id.* at 534. Similarly, the Court observed that the Rule 60(b) motion at issue before it "allege[d] that the federal courts misapplied the federal statute of limitations," a determination that had precluded merits adjudication of the § 2254 petition. *Id.* at 533. In each of these examples, although the Rule 60(b) motion sought to reopen a judgment, the basis for doing so was unrelated to the substantive claims in the original habeas petition as both the original judgment and the Rule 60(b) motion addressed other matters. A true Rule 60(b) motion in the habeas context will not ask for a second

adjudication on the initial claims or a first adjudication of new substantive claims, but rather will ask the court to remove barriers that had earlier precluded an adjudication on the merits of the initial claims. *See id.* at 534.

In *Gonzalez*, the Supreme Court speculated as a theoretical matter that Rule 60(b) may be available in the habeas context in a very rare set of undefined circumstances when the district court had previously reached a merits determination. For example, the Supreme Court recognized fraud as a potential defect in the integrity of the federal habeas proceedings. *Id.* at 532 n.5. Specifically, it discussed a scenario where a witness puts forth a fraudulent basis for refusing to appear at the federal habeas proceeding, and the district court enters an initial judgment on the merits then presented to it. So, granting the Rule 60(b) motion upon a showing of fraud would result in a new, but permissible, merits determination, but it would not implicate § 2244's limits on second or successive habeas petitions. First, the motion itself would relate to a "nonmerits aspect of the first habeas proceeding" and, second, the relief sought would be "confine[d] . . . to [reopening] the first federal habeas petition" for a new merits determination absent the fraud rather than altering the substantive claims that the district court was asked to consider as part of its review. *See id.* at 534.

Fatally for Bixby, this necessary consistency with AEDPA does not exist here, where Bixby alleges that sub-par representation in his initial § 2254 habeas petition poses a cognizable flaw in the integrity of the federal habeas proceeding. Bixby's argument about the poor quality of his initial § 2254 counsel's performance cannot be untethered from his core objective of changing the contents of his first federal habeas petition (by bolstering

21

arguments and adding new claims) and ultimately seeking a different disposition on the

merits determination from that of the first habeas petition. As such, the substance of his

motion squarely implicates § 2244's limits on second or successive habeas petitions in a

way that *Gonzalez*'s conception of a "true" Rule 60(b) motion does not.[7] *Gonzalez*

recognized that Rule 60(b) motions like Bixby's, which ultimately are based on "habeas

counsel's omissions" in the original § 2254 proceedings, "ordinarily do[] not go to the

integrity of the proceedings, but in effect ask[] for a second chance to have the merits

determined favorably." *Id.* at 532 n.5 (citation omitted); *see also Coleman v. Stephens*, 768

F.3d 367, 371–72 (5th Cir. 2014) (per curiam) (distinguishing a Rule 60(b) motion

argument that counsel was ineffective in failing to find and present evidence to support

---

[7] Our holding in *Cavalieri v. Virginia*, No. 20-6287, 2022 WL 1153247 (4th Cir. Apr. 19, 2022) (per curiam), highlights the difference *Gonzalez* deems essential. There, federal habeas counsel submitted a § 2254 petition that—"for reasons that remain[ed] unknown"—was missing more than half its pages when filed on the district court's docket. *Id.* at *1. The district court dismissed the petition, and Cavalieri moved under Rule 60(b) to reopen, arguing "that the district court erred by not addressing all the arguments in his § 2254 petition" on the merits, observing "that some of the pages appeared to have been misplaced by the court because he had mailed in a complete petition," and attaching "to his motion a complete copy of his § 2254 petition." *Id.* Although the district court denied the motion, we reversed and "remand[ed] with instructions to grant the motion and permit Cavalieri to refile his § 2254 petition with the missing pages." *Id.* at *3.

In holding that Rule 60(b) relief should have been granted, we observed that the motion was a "true Rule 60(b) motion" because it challenged a "defect in the integrity of the federal habeas proceedings" that had precluded the district court from deciding the § 2254 petition on the merits. *Id.* at *1–2 (citation omitted). Important to our conclusion was the reflection in the record that the § 2254 petition Cavalieri wanted the district court to consider on the merits in the first instance was "the same petition" he'd originally filed— "the only substantive difference being the addition of the missing pages." *Id.* at *1; *see id.* at *3 (noting that the record made clear "that the complete version of the § 2254 petition is a copy of the same document (with the missing pages included) and not a new petition that Cavalieri drafted in an attempt to present more claims").

22

claims in an initial habeas petition (which would "sound[] in substance" and thus not be a true Rule 60(b) motion) from an argument that "the court or prosecution prevented [counsel] from presenting such evidence" (which might present a procedural claim cognizable in a Rule 60(b) motion)).

Bixby's basis for seeking Rule 60(b) relief does not fall outside this "ordinar[]y" rule. Neither the Supreme Court nor we have had occasion to flesh out when an attack on federal habeas counsel's conduct might fall within this limited, undefined, and theoretical caveat. But no court of appeals has interpreted "ordinarily" to mean that movants can use Rule 60(b) to reopen habeas proceedings based on arguments about the *quality* of federal habeas counsel's conduct when the initial federal habeas petition resulted in a merits denial. And, at bottom, that's the basis on which Bixby seeks relief.

Bixby relies heavily on the Second Circuit's decision in *Harris v. United States*, 367 F.3d 74 (2d Cir. 2004), to argue that his claim is cognizable, but this pre-*Gonzalez* decision does not support his ability to obtain relief in a post-*Gonzalez* world.

In *Harris*, federal habeas counsel had filed a § 2255 motion and obtained an unfavorable merits determination. The petition omitted several claims that the petitioner argued had potential merit, including two sentencing issues that the sentencing judge had conceded were "debatable" and "would probably be grounds for appeal." *Id.* at 78. In addition, initial federal habeas counsel submitted a declaration as part of the Rule 60(b) motion in which he "confess[ed] his ineffectiveness" in handling the initial § 2255 proceeding. *Id.* at 82. Although recognizing that complete abandonment by counsel could serve as a proper basis for relief under Rule 60(b) without running afoul of AEDPA's limits

23

on second or successive habeas petitions—and, again, without the benefit of *Gonzalez*—the Second Circuit nonetheless affirmed the denial of Rule 60(b) relief. *Id.* In its view, "nothing in the record or in [counsel's] declaration suggests that his performance approached a level of deficiency that could remotely be deemed 'abandonment' and therefore an 'extraordinary circumstance'" under Rule 60(b)(6). *Id.*

Whatever broader principle *Harris* may have stood for before *Gonzalez*, in *Gonzalez*, the Supreme Court cited *Harris* as an example of a case in which the petitioner brought a Rule 60(b) motion that, "although labeled a Rule 60(b) motion, is in substance a successive habeas petition and should be treated accordingly," 545 U.S. at 531, because it "s[ought] to add a new ground for relief," *id.* at 532. *Harris,* therefore, offers Bixby no refuge in light of *Gonzalez*.[8]

What's more, even if we were to accept that actual abandonment could be a proper basis for Rule 60(b) relief—something that we do not decide today—that is not what Bixby

---

[8] The Eleventh Circuit has cited *Harris* favorably as a theoretical basis for permitting an attorney-abandonment-based Rule 60(b) motion post-*Gonzalez*, but it has not to date concluded that any claim asserting abandonment has actually shown abandonment. For example, in *Franqui*, the court rejected a petitioner's argument that he presented a true Rule 60(b) motion by arguing that initial federal habeas counsel had repeatedly promised to include a certain claim in the initial habeas petition but had not only failed to do so, but also failed to inform his client about that omission in subsequent conversations about the petition. 638 F.3d at 1372. In so holding, the Eleventh Circuit observed, "*Gonzalez* does not allow us to take so broad a view [as petitioner asserts] of what constitutes a defect in the integrity of federal habeas proceedings" and "[w]e do not consider Petitioner's allegations to be out of the ordinary" given that he does not allege "that the actual omission of the . . . claim was, in fact, intentional." *Id. Franqui* thus supports our conclusion that even if *Gonzalez* carves out potential room for claims of attorney abandonment to present a claim attacking the integrity of the federal habeas proceedings, "abandonment" is strictly understood as something other than an attack on the quality of representation. Omitted claims and poor arguments are not enough. *See id.*

24

alleges. Bixby's initial § 2254 counsel filed a § 2254 petition identifying numerous claims challenging the constitutionality of Bixby's continued detention. Counsel pursued the action through several pleadings and briefs and obtained a merits determination analyzing (and rejecting) those claims under AEDPA. While Bixby now argues that counsel could have presented these claims better and differently, and that counsel could have pursued additional claims too, none of those arguments reflect that his initial § 2254 counsel "abandoned" Bixby. In short, Bixby's arguments go to the *quality* rather than the non-existence of representation during his initial § 2254 proceeding. And that makes all the difference under *Gonzalez*.

To recap, Bixby asks us to hold that his claim falls within the narrow exception implied by *Gonzalez*'s use of the word "ordinarily" in which inept briefing by counsel would be the basis to attack the integrity of the proceedings in such a way as to be a true Rule 60(b) motion. We decline this invitation, however, because Bixby's motion relies on Rule 60(b) to do something he could not do under AEDPA—challenge the *quality* of his initial § 2254 counsel's representation to get a district court to take a second look at merits of his § 2254 petition, which he also seeks to modify. Given the direct conflict between AEDPA and Rule 60(b) principles governing that question, *Gonzalez* instructs that AEDPA prevails. Therefore, the district court correctly determined it lacked jurisdiction to consider

Bixby's Rule 60(b) motion, which it properly construed to be an unauthorized second or successive § 2254 petition.[9]

### III.

### A.

Having determined that the district court correctly recognized that Bixby did not bring a true Rule 60(b) motion and that his motion was properly subjected to AEDPA's limits on a second or successive habeas petition, we turn to the question of the proper

---

[9] Bixby argues that initial § 2254 counsel's poor performance culminated in the district court's failing to intervene and "us[ing] the initial petition "against" him to deny habeas relief. Opening Br. 40. To the extent this argument is the narrative conclusion to the consequences of initial § 2254 counsel's alleged abandonment of Bixby, it no more demonstrates the district court's jurisdiction over the Rule 60(b) motion than his attorney-abandonment argument did.

In his reply brief, Bixby posits for the first time that this argument was not just part of his argument about why his initial § 2254 counsel's alleged abandonment constituted a "true" Rule 60(b) motion over which the district court had jurisdiction. Instead, he now claims that the district court's failure to intervene or take corrective action despite being aware of initial § 2254 counsel's performance was a separate, additional procedural defect that satisfied Rule 60(b) and permitted the court to exercise jurisdiction over his motion. The record belies this assertion. Bixby's Rule 60(b) motion and related filings in the district court raised numerous arguments supporting why *initial § 2254 counsel's performance* served as the catalyst for reopening his § 2254 proceedings, but they did not contend that he was separately entitled to Rule 60(b) relief based on how the district court responded to initial § 2254 counsel's performance. Simply put, the issue of the district court's own performance was not put before the district court in the Rule 60(b) motion, so it is not properly before us on appeal either. *See In re Under Seal*, 749 F.3d 276, 287 & n.14 (4th Cir. 2014) (discussing preservation of issues in district court).

We also observe that in addition to Bixby's failure to raise this claim in the district court, Bixby did not adequately raise or develop it on appeal either. His failure to do so is yet another reason not to consider it. *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue." (cleaned up)).

26

disposition. Given that Bixby's motion actually sought permission to raise new and revised claims in a second or successive § 2254 petition, § 2244 and our case law reflect that the district court should have dismissed—not denied—the motion.[10]

We begin with the text of § 2244, which circumscribes which claims may be raised in a second or successive § 2254 petition and prescribes the mechanism for raising those claims. In short, before filing a second or successive § 2254 petition, a petitioner must obtain authorization to do so from the appropriate court of appeals. § 2244(b)(3). And a court of appeals can only authorize a second or successive § 2254 petition if the claims meet the statutory criteria. § 2244(b)(2). Most important for our purposes, AEDPA demands that district courts presented with an unauthorized second or successive § 2254 petition "shall . . . dismiss[]" that petition, regardless of whether the petition restates prior claims, § 2244(b)(1), or raises new claims, § 2244(b)(2). We thus know that the district court would have been required to dismiss—not deny—an unauthorized second or successive § 2254 petition.

Here, of course, Bixby did not formally file a second or successive § 2254 petition, but the district court properly determined that his Rule 60(b) motion was, in substance, just that. What's more, the court properly recognized that under the above-cited provisions of § 2244, it lacked jurisdiction to consider an unauthorized second or successive § 2254

---

[10] We note that not all procedural bars to proceeding under Rule 60(b) require dismissal; we are speaking solely to the issue presented here, where there's a jurisdictional bar under AEDPA to the district court's consideration of the motion on the merits. *See, e.g.*, *Moses*, 815 F.3d at 164–69 (affirming denial of a Rule 60(b) motion on the grounds that it was untimely under Rule 60(c) and that a change of law did not constitute "exceptional circumstances" warranting reopening under Rule 60(b)(6)).

petition. We have previously recognized that if a filing labeled as a Rule 60(b) motion is "tantamount to" an application for habeas corpus, then "the court must either dismiss the motion for lack of jurisdiction or transfer it to this court so that we may perform our gatekeeping function under § 2244(b)(3)." *United States v. Winestock*, 340 F.3d 200, 207 (4th Cir. 2003), *abrogated in part on other grounds by McRae*, 793 F.3d 392; *cf. Richardson*, 930 F.3d at 589, 597–98 (concluding that a Rule 60(b) motion was the "functional equivalent of a [second or successive] § 2254 petition," which meant the district court was "required to either dismiss the motion or transfer it to this court so that we could consider it under our gatekeeping function"); *Franqui*, 638 F.3d at 1370–71, 1375 (observing that the district court's denial of Rule 60(b) relief was erroneous under *Gonzalez* because he "did not qualify to seek Rule 60(b) relief" given that his motion arguing that federal habeas counsel's gross negligence or abandonment led to the omission of a viable claim was properly understood as an attempt to bring an unauthorized second or successive § 2254 petition, and vacating the judgment and remanding "with instructions to dismiss Petitioner's motion for lack of subject-matter jurisdiction").

Given the nature and scope of Bixby's motion, the district court should have dismissed the motion. Therefore, we vacate the district court's order denying relief and remand the case with instructions to dismiss for lack of subject matter jurisdiction.

28

B.

We conclude by addressing a matter that would ordinarily be a threshold inquiry—whether we were required to grant Bixby a COA before considering his appeal.[11] The parties disagree on this threshold determination for establishing our own jurisdiction, and we acknowledge that applying the district court's order to our existing case law encounters some ambiguity. This is so because we have held that an appeal from the denial of a Rule 60(b) motion in the habeas corpus context requires issuance of a COA. *Reid*, 369 F.3d at 369. But this Court has also held that two Supreme Court cases issued after *Reid,* combined with the difference between a denial and a dismissal, meant that a COA is not required to review a district court's order dismissing a Rule 60(b) motion for lack of jurisdiction when, under *Gonzalez*, the district court concludes the motion improperly seeks to circumvent AEDPA. *McRae*, 793 F.3d at 400.

The dilemma in applying this precedent here stems directly from the district court's correct recognition that it could not consider the Rule 60(b) motion on the merits because it lacked jurisdiction to consider what amounted to an unauthorized second or successive habeas petition combined with its incorrect choice to deny rather than dismiss the motion. Thus, while the basis for the district court's decision indicates that *McRae* should control

---

[11] Under § 2253(c)(1)(A), a COA is required for a habeas applicant to obtain appellate review of "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." Where it applies, the COA requirement is jurisdictional. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("[U]ntil a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners.").

whether a COA is required, its bottom-line disposition leaves some room for arguing that *Reid* controls.

For several reasons, we conclude that we need not issue a COA to consider Bixby's appeal. To start, except for the designation to deny the motion, the order at issue in this case is substantively unlike the order at issue in *Reid*, and nearly identical to the order at issue in *McRae*. In *Reid*, the district "court denied the purported Rule 60(b) motion on the merits, and this Court raised the jurisdictional issue sua sponte after granting a COA." *McRae*, 793 F.3d at 400 n.7. Read in context, *Reid*'s discussion of why a COA was required to consider an order denying a Rule 60(b) motion referred specifically to an order denying the motion on the merits, and the relationship that such an order has to an underlying § 2254 petition and the COA requirements. *See Reid*, 369 F.3d at 367–70. In contrast, and as was true in *McRae*, the appeal in this case challenges a different "type" of order—one that does not reach the merits of whether Rule 60(b) relief is appropriate based on the presence or absence of "extraordinary circumstances," but instead concluded both that the district court "lack[ed] jurisdiction" to do so, *Bixby*, 2022 WL 2905509, at *3, and specifically "construed [the motion] as an unauthorized successive habeas petition," *id.* at *4. *Accord McRae*, 793 F.3d at 396. The substance of the order here is on all fours with the substance of the order at issue in *McRae*. In all practical respects, the reason why a COA was required in *Reid* holds no applicability here, while the reason why a COA was not required in *McRae* seems to apply with equal force here. *See id.* at 399–40. This observation does not discount the genuine difference between a denial and a dismissal generally speaking; it only notes that in *this* case, the district court's "denial" was not what it appeared to be at first glance.

30

*See id.* ("When a district court *denies* a Rule 60(b) motion on the merits, it necessarily considers the merits of the underlying habeas petition. . . . The same cannot be said about a *dismissal* of a Rule 60(b) motion on jurisdictional grounds. No one can say right now whether McRae's habeas proceeding was with merit or without based on the district court's dismissal.").

As noted, given that the district court properly characterized the Rule 60(b) motion as an unauthorized second § 2254 petition and it correctly determined that it lacked jurisdiction as a result, it was obliged to dismiss Bixby's motion or transfer it to this Court for us to perform our gatekeeping function for requests for authorization to file a second or successive petition. *See infra* Section III.A. Had the district court followed our precedent on the disposition that necessarily followed from its conclusion that it lacked jurisdiction, this case would have squarely fallen under *McRae*'s holding that a COA is not required, and thus avoided any subsequent confusion about whether a COA was required for us to consider Bixby's appeal. *See* 793 F.3d at 400 ("[W]e need not issue a COA before determining whether the district court erred in dismissing [a] purported Rule 60(b) motion as an unauthorized successive habeas petition.").

Lastly, we observe that *McRae* followed from two Supreme Court cases—including *Gonzalez*—which had been issued after *Reid*. Just as *McRae* recognized that these two decisions narrowly abrogated *Reid* in the context of a jurisdictional dismissal of a Rule 60(b) motion, *id.* at 400 n.7, the same two decisions abrogate *Reid* in the current slightly different context as well. In *McRae*, this Court explained how the two Supreme Court cases clarified the interplay between AEDPA's COA requirement and orders deciding Rule 60(b)

31

motions, and that analysis would apply equally to the circumstances presented here. *See id.* at 399 ("*Gonzalez* mandates that we treat true Rule 60(b) motions differently from successive habeas petitions, and *Harbison* [*v. Bell*, 556 U.S. 180 (2009),] holds that only final orders with a sufficient nexus to the merits of a habeas petition trigger the COA requirement. In other words, *Gonzalez* reveals the importance of distinguishing between Rule 60(b) motions and successive petitions, and *Harbison* opens the door for us to ensure that the district court does so properly."); *see also id.* at 400 n.7.

We therefore conclude that it was not necessary for us to grant a COA before deciding Bixby's appeal.

IV.

For these reasons, the district court properly construed Bixby's Rule 60(b) motion to be an unauthorized second or successive § 2254 petition over which it lacked jurisdiction. Because the court should have dismissed Bixby's motion, we vacate its order and remand with instructions to dismiss for lack of subject matter jurisdiction.

*VACATED AND REMANDED*
*WITH INSTRUCTIONS*

32